GRAHAM v. EARL.[1]

(Circuit Court of Appeals, Ninth Circuit. October 18, 1897.)

No. 315.

1. PATENTS—ACTION FOR INFRINGEMENT—PLEADING.
Where the complaint describes the invention of the patent sued on by the name given it in the patent, and then specifically refers to the letters patent "for further and fuller description of the invention therein patented," such reference imports into the complaint the description contained in the patent, and is controlling as to the nature of the invention.

2. SAME—NOVELTY AND INFRINGEMENT—CONCLUSIVENESS OF VERDICT—APPEAL
The questions of novelty and infringement are mixed questions of law and fact, so that, if the court correctly instructs the jury on the applicable questions of law, the verdict is conclusive on appeal, unless there is an entire want of evidence on which to base it.

3. SAME—CONSTRUCTION OF DISCLAIMERS.
In determining the meaning of a disclaimer, the same rules are to be observed as in construing any other written instrument; the purpose being to carry out the intention of the person executing it, as indicated by its language, when construed with reference to the proceedings of which it forms a part. It must therefore be read in connection with the original specifications, of which it becomes a part when recorded.

4. SAME—DISCLAIMER OF BROAD CLAIMS IN COMBINATION.
A disclaimer of broad claims in a combination does not operate as a disclaimer of other and narrower claims, covering specific means, which are included in the language of such broad claims.

5. SAME—PARTIES LIABLE TO INFRINGEMENT—AGENTS AND MANAGERS.
An agent or manager for a given state, who is engaged in leasing infringing fruit cars to shippers for his principals, who are the owners thereof, is himself liable as an infringer, though he receives a regular salary, and has no interest in the profits of the business.

6. SAME.
The Earl reissue, No. 11,324, for a ventilator and combined ventilator and refrigerator car, is not invalid because of any expansion of the invention described in the original patent; and the claims thereof are infringed by a refrigerator car having ventilators made according to the Kerby patent, No. 537,293.

In Error to the Circuit Court of the United States for the Northern District of California.

This was an action at law by Edwin T. Earl against Robert Graham to recover damages for infringement of a patent relating to

[1] This case was published in 82 Fed. 737, and it is now republished, by request, in order to correct errors in the former report.

ventilators for refrigerator cars. In the circuit court there was a verdict and judgment for plaintiff for nominal damages, in the sum of one dollar, and the defendant brings error.

Wheaton, Kalloch & Kierce, E. S. Pillsbury, and Lewis L. Coburn, for plaintiff in error.

John H. Miller, John L. Boone, and Guy C. Earl, for defendant in error.

Before GILBERT, Circuit Judge, and HAWLEY and DE HAVEN, District Judges.

DE HAVEN, District Judge. This action was brought to recover damages for the infringement of reissued letters patent numbered 11,324, granted to the plaintiff on the 18th day of April, 1893, and entitled, "Ventilator and Combined Ventilator and Refrigerator Car." The complaint alleges that the invention patented was "a ventilator and combined ventilator and refrigerator car," but makes special reference to such letters "for further and fuller description of the invention therein patented"; and this reference imports into the complaint the description contained in the patent, and is controlling as to the nature of the invention patented.

The action was tried by a jury, and a verdict rendered in favor of the plaintiff for damages in the sum of one dollar. The case is brought here by the defendant on a writ of error to reverse the judgment rendered on such verdict in favor of the plaintiff. The specific claims of invention made by the plaintiff in the application upon which such reissued letters patent are based, so far as necessary to be here set out, are as follows:

"(1) In combination with a car having separate and independent openings, a lid or cover for each opening, adapted to close the latter, and means for holding the lids open in oppositely inclined positions, whereby said lids are adapted, not only to form closures for the openings, but also to act as funnels to insure a circulation of the air within the car. (2) In combination with a car having separate and independent openings, a lid or cover for ·each opening, adapted to close the latter, and means carried by the respective lids for holding them open in oppositely inclined positions. (3) In combination with a car having separate and independent openings, a lid or cover for each opening, adapted to close the latter, and foldable devices, substantially such as shown and described, for holding the lids open in oppositely inclined directions. (4) In combination with a car having separate and independent openings, movable covers or lids adapted to close such openings, and side wings hinged to such lids or covers, and adapted to sustain them in oppositely inclined positions, and to form, in connection with the lids. a funnel."

On April 11, 1895, the plaintiff filed with the commissioner of patents a disclaimer in full of the foregoing claims 1 and 2. On April 9, 1895, there was granted to one Thomas B. Kerby patent numbered 537,293, for a ventilator for refrigerator cars. This ventilator was afterwards, and before the commencement of this action, attached to and used upon refrigerator cars employed in transporting fruit from California to the East, and such use of the Kerby ventilator constitutes the alleged infringement of plaintiff's patent. A sufficiently accurate description of the Kerby ventilator, and by means of which it can be easily compared with the ventilator covered by plaintiff's

revised letters patent, is contained in one of the briefs filed for the plaintiff in error, and is as follows:

"This Kerby ventilator is applied to the ordinary four openings of refrigerator cars, using the lids of the openings for the upper part of the ventilator. The lids are made of double thicknesses of boards, placed in parallel planes with each other, and far enough apart to leave a pocket between them, into which the screen and side wings of the ventilator are shoved and closed when the ventilator is put out of use. When the ventilator is in use the said lid is held up by the frame of the Kerby screen, and the side wings do not hold or assist in holding the lids in any position, or in any way. The wide ends of the side wings are hinged to the screen frame, and they swing around horizontally when they are being put into or taken out of use."

In addition to the foregoing, other facts will be hereinafter stated in the discussion of the several points to which they more particularly relate.

1. It is earnestly insisted by the plaintiff in error that the court admitted irrelevant testimony tending to show that plaintiff's patent covered a combined ventilator and refrigerator car as well as ventilator. We are satisfied from a careful examination of the record that this contention cannot be sustained. It is possible that some of the questions asked in behalf of the plaintiff, and allowed by the court, were not so specific and accurate in their reference to the particular device covered by the plaintiff's patent as to be entirely free from criticism, but it is clear to us that the jury could not possibly have been misled thereby. And in submitting the case to the jury the judge took occasion to particularly instruct them as follows:

"A patent for invention only covers and protects what is particularly pointed out and claimed as the patentee's invention in the claims of the patent. It is usually expedient for the specifications of a patent to describe things already in use, and which constitute no part of the invention claimed, in order to better explain what the invention is. The present patent mentions 'refrigerator cars,' yet those refrigerator cars were admittedly older than the plaintiff's alleged invention, and are not claimed as any part of his invention in the patent. You will therefore consider that nothing is protected by the patent that is described in its specifications, excepting only what is specified in the claim of the patent as the invention which the patentee claims as belonging to him."

It would not seem possible that, after so explicit an instruction, the jury failed to understand that plaintiff's patent did not cover either a refrigerator or ventilator car, or anything other than the ventilating device claimed by the plaintiff as his invention.

2. It is urged by plaintiff in error that the patent issued to the plaintiff in the action is void for want of novelty in the invention claimed, and also that the device covered by the Kerby patent is not an infringement of the plaintiff's patent. This contention, in each of its branches, presents a mixed question of law and of fact. 1 Rob. Pat. § 272; Paving Co. v. Molitor, 113 U. S. 609, 5 Sup. Ct. 618. The circuit court correctly instructed the jury in relation to the law applicable to each of these questions, and, unless there was an entire want of evidence upon which to base the verdict returned by the jury, such verdict is conclusive here as to every fact embraced within the issues submitted to the jury for decision. This results from the well-settled rule that on a writ of error the appel-

late court can only consider errors of law, and that the review under such writ does not extend to matters of fact.    Zeller's Lessee v. Eckert, 4 How. 289.    Without undertaking to give even a synopsis of the evidence bearing upon the question of the novelty of the invention covered by plaintiff's patent, it is sufficient for us to say that, in our judgment, there was ample evidence to sustain the verdict of the jury upon this point.    Nor are we able to agree with the further contention of plaintiff in error that this court should declare, as a matter of law, that the Kerby device is not an infringement upon the invention covered by the plaintiff's patent.    Of course, there may be cases in which there is such a marked dissimilarity in the structure and functions of devices covered by different patents that a court may declare, as a matter of law, that the one does not infringe upon the other, but such is not the case before us. Claims 3 and 4 of plaintiff's patent cover a foldable ventilator in combination with a refrigerator car, while the Kerby device is also a foldable ventilator in combination with such a car.    There is a slight difference between the two, in reference to the mode by which the side wings are hinged to the cover of the ventilator.    In the plaintiff's invention, such wings are hinged directly to the cover, while in the Kerby device the side wings are hinged to the frame of a screen, such screen being placed in front of the ventilator, and hinged to its cover; but, notwithstanding this difference in the mode of holding the side wings of the ventilator in place, we do not think it can be said that the two devices do not perform the same function, and in the same way.    It is clear both are foldable devices, and both accomplish the same general purpose of deflecting and directing the air down into a moving car at one end, and permitting it to pass out at the other; and both, when not in use, are folded in such a manner as not to be in the way of those operating the train.    In view of these facts, we are not prepared to say, as matter of law, that the one ventilating device is not the equivalent of the other.

3. The plaintiff in error further insists that under the evidence and the instructions of the court the jury could not possibly have found that the Kerby device was an infringement of any other than claims 3 and 4 of the plaintiff's reissued letters patent.    And from this it is argued that the judgment should be reversed on the ground that the plaintiff's disclaimer of claims 1 and 2 of his reissued letters patent necessarily operated as a disclaimer of the specific combination or invention described in claims 3 and 4 of the same patent.    Claims 1 and 2 of the patent just referred to are exceedingly broad, and cover all possible means for holding the lids of the ventilators open in oppositely inclined positions, while its claims 3 and 4 are more narrow, and cover only the specific means therein particularly described for holding such lids open.    The whole argument of the plaintiff in error upon this point seems to rest upon the proposition that, as claims 1 and 2 are broad enough in their descriptive language to include the specific combinations covered by claims 3 and 4, plaintiff's disclaimer of claims 1 and 2 was, in legal effect, a disclaimer of the particular device described in claims 3 and 4; in other words, that the particular means for holding the lids of the venti-

lators open as described in claims 3 and 4 were thus disclaimed, because such means are covered by the broad language of claims 1 and 2. In support of this position it is argued that the disclaimer filed by the plaintiff is not to be treated as a simple withdrawal or expunging of claims 1 and 2 from the specifications of which they originally formed a part, and thus leaving the remaining claims to be construed as if such claims 1 and 2 had never been made, but that the instrument of disclaimer is to be construed by itself as an independent and affirmative declaration by the plaintiff that he was not the first or original inventor of any device covered by claims 1 and 2; and the case of United States Cartridge Co. v. Union Metallic Cartridge Co., 112 U. S. 644, 645, 5 Sup. Ct. 486, is cited to sustain this proposition. In that case it was said:

"The disclaimer was one of the fact of invention. It could not lawfully be anything but a disclaimer of the fact either of original invention or of first invention. It was not merely the expunging of a descriptive part of the specification, * * * but it was a disclaimer of all claims based on such descriptive part," etc.

But in that case the court was discussing the effect of a disclaimer of the fact of invention of a specific and particular mechanical device, the language of the disclaimer thus construed by the court being:

"Your petitioner disclaims the said movable die, D, called a 'bunter,' as being the invention of said Ethan Allen; thus leaving the description of said die, D, the same as shown in the original patent and the drawings thereof."

Of course, in such a case the court properly held that the disclaimer was specific, and must be construed as an affirmative declaration that the patentee was not the inventor of the particular thing disclaimed. In considering the scope and effect to be given a disclaimer, the same rules are to be observed as in construing any other written instrument, and so as to carry out the intention of the person executing it, as indicated by its language when construed with reference to the proceedings of which it forms a part. It cannot be read independently of its relation to the original specifications, of which it becomes a part when recorded. Applying this rule of interpretation to the disclaimer filed by the plaintiff in this action, it would seem too clear to admit of any doubt that such disclaimer cannot be given the broad and sweeping effect claimed for it by the plaintiff in error. On the contrary, the only reasonable construction which can be given the disclaimer of claims 1 and 2 is that the plaintiff intended to thereby limit his patent to the specific invention described in the remaining claims of his specifications, and not to abandon such remaining claims.

4. We do not think the claims of the plaintiff's reissued letters patent are any expansion of the invention referred to in the specifications of his original patent, and such reissued letters are therefore valid, under the rule declared in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825; Odell v. Stout, 22 Fed. 159; and Gaskill v. Myers, 81 Fed. 857.

5. Another ground upon which the reversal of the judgment under review is asked is that the evidence fails to show that the plaintiff

in error was guilty of the act of infringement complained of, even if it should be conceded that the Kerby device is an infringement upon the invention protected by the reissued letters patent granted to the defendant in error.    In order to fully understand the point thus made, it is necessary to briefly refer to the facts upon which it is based.    The cars on which the Kerby device was used, and which use the plaintiff claims to have been an infringement upon his patent rights, were owned by Armour & Co., of the city of Chicago; and the plaintiff in error was their general manager in this state, and as such conducted for them here the business of leasing such cars, furnished with the Kerby device, to shippers of fruit who desired to engage the use of cars thus equipped.    The plaintiff in error had no interest in those cars, nor in the profits of the business thus conducted by him for Armour & Co.    When leased, the cars were delivered by the plaintiff in error, or by his direction, to the shipper, who loaded them himself, and paid the railroad company for hauling them to their place of destination; and, while thus in possession of the shipper, neither the plaintiff in error nor his principals exercised any control over the use of such cars, or the Kerby device used in connection therewith.    Upon this state of facts, it is claimed that the plaintiff in error did not, within the meaning of the law, either manufacture, use, or vend the Kerby device, and therefore was not guilty of any infringement upon plaintiff's invention; that he was only a mere agent and solicitor for Armour & Co. in the business carried on by them, and in which business the Kerby device was, in connection with these cars, let for hire; and that as such agent he is not responsible for any wrong suffered by the plaintiff by reason of such use of the Kerby device.    This contention presents the most serious question in the case, and it is not to be denied that there are decided cases which support the proposition contended for by the plaintiff in error.    The case of Nickel Co. v. Worthington, 13 Fed. 392, is one.    That was, like this, an action at law to recover damages for the infringement of certain patents, and a corporation and some of its officers were made defendants.    The court held that only the corporation was liable, although it was found that one of the other defendants solicited the business for which judgment was rendered against the corporation. In delivering the opinion in that case it was said by Lowell, Circuit Judge:

"I am of opinion that the only persons who can be held for damages are those who should have taken a license, and that they are those who own, or have some interest in, the business of making, using, or selling the thing which is an infringement, and that an action at law cannot be maintained against the directors, shareholders, or workmen of a corporation which infringes a patented improvement."

We are unable to agree with the opinion thus expressed, that only those persons can be held for damages "who own, or have some interest in, the business of making, using, or selling the thing which is an infringement."    It is well settled that a mere workman or servant who makes, uses, or vends for another, and under his immediate supervision, a patented article, is not liable in an action at

law for damages which may have been sustained by the patentee by reason thereof. This rule is an apparent exception to the general principle of law which makes all who participate in a tort of misfeasance principals, and liable for damages therefor; and we do not think it should be so extended as to exempt from liability the general manager of a business which infringes upon the exclusive right of a patentee to make, use, and vend the invention protected by his patent. Such an agent, to use a word sometimes employed in the discussion of the law relating to fellow servants, may be regarded as a vice principal, and he should be held responsible in damages for any action of his in the transaction of the business thus placed under his management which is in violation of the rights of another. In this case the plaintiff in error, as the general manager in this state of this particular branch of the business of Armour & Co., voluntarily entered into contracts which contemplated the use of the Kerby device; and we do not think it is at all material that he engaged in this work for a stated salary, rather than reserving to himself a share of whatever profits his principals might make by reason of such unauthorized invasion of rights secured to defendant in error by his letters patent. Upon the facts appearing here, we are clearly of the opinion that the plaintiff in error may be said to have authorized the use of the Kerby device when he entered into the contracts before referred to, and is equally answerable with his principals for damage on account of the wrong thus done to the defendant in error. This conclusion seems to be in harmony with the views of Mr. Robinson, as stated in section 912 of volume 3 of his valuable work on Patents, in which, after referring to the rule adopted by some courts, that all directors, agents, or other servants of a private corporation, who actually employ or authorize the employment of a patented invention, are guilty of an infringement, and personally answerable to the patentee, the author declares that this principle "is in harmony with other doctrines of the law, sufficiently protects the patentee, and justly punishes those whose willful acts place them on the same footing with individual infringers. Under this opinion, all agents who perform acts of infringement, and all stockholders, directors, and other officers who, in the prosecution of the business of the corporation, authorize them, participate in the infringement, and are personally responsible to the patentee." And in the case of Cramer v. Fry, 68 Fed. 201, the court gave a strong intimation of its approval of this statement of the law, although in that opinion stress seems to have been placed upon the fact that the agent making the sales of the alleged infringing machine received, in addition to his salary, a commission on sales made by him,—a fact which we would not regard as material if such commission was paid to the agent on account of his services as such. The case of Lightner v. Brooks, 2 Cliff. 287, Fed. Cas. No. 8,344, was an action on the case for the alleged infringement of a patent. The defendant therein, as chairman of the board of directors of a railroad corporation, had entered into a contract in behalf of the corporation for the construction and delivery to such corporation of cars furnished with boxes similar to those patented by the plaintiff in that action. In that case

judgment was entered for the defendant upon the ground that the contract did not necessarily contemplate that the contractor should use the patented article without license from the patentee; but the court, in the opinion, which was delivered by Mr. Justice Clifford, of the supreme court of the United States, conceded that the defendant would have been liable if the contract could have been construed as one having in view an infringement of the plaintiff's patent. This is the language of Mr. Justice Clifford upon the point we are now considering:

"The argument for the plaintiff is that the defendant is liable because it is insisted that, whenever an agent of a corporation assumes to authorize or directs the commission of a trespass, the agent assuming to confer the authority, or who gives the direction, is himself personally liable to the injured party, although he did not directly participate in the commission of the wrongful act. Undoubtedly, all persons commanding, procuring, aiding, or assisting in the commission of a trespass are principals in the transaction, and stand responsible to answer in damages to the injured party. Both the master who commands the doing and the servant who does the act of trespass may be made responsible as principals, and may be sued jointly or severally for damages, as the injured party may elect."

While what was thus said cannot be regarded as an authoritative decision upon the point we are now considering, still, as the expression of the opinion of a very learned judge upon a question naturally suggested by the argument of that case, it is entitled to very great respect, and in our opinion it is a correct statement of the law applicable to this case. Without extending this opinion by a discussion of other points urged in behalf of the plaintiff in error, it will be sufficient for us to add that we find no error in the record; and therefore the judgment sought to be reversed should be, and accordingly is, affirmed.